IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMENIA MAYER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOYS & GIRLS CLUBS OF PHILADELPHIA | : | |
| INC., and THE SCHOOL DISTRICT OF | : | NO. 10-7574 |
| PHILADELPHIA | : | |
| Defendants. | : | |

MEMORANDUM ON MOTION TO DISMISS

**Baylson, J.**                                                                                      September 23, 2011

## I.     Introduction

Plaintiff Samenia Mayer ("Plaintiff") brings this action against Defendants Boys & Girls Clubs of Philadelphia, Inc. ("BGCP") and the School District of Philadelphia ("the School District"), for violations of the False Claims Act ("FCA"), 31 U.S.C. §3730(h), and the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. § 1421 et seq.  BGCP moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the following reasons, BGCP's Motion is DENIED.

## II.    Factual and Procedural History

Plaintiff's Complaint alleges the following facts.  Plaintiff is a 34-year-old woman who began work on or about January 18, 2010 for BGCP.  Compl. ¶ 5-12.  During the course of her employment, Plaintiff served as the Program Assistant for the "Step It Up" Mentor Program at Germantown High School in the School District.  Compl. ¶ 22.

---

[1] The School District filed an Answer to Plaintiff's Complaint on March 7, 2011 (ECF No. 10).

1

The "Step It Up" program was initiated pursuant to a 2009 grant to the School District from the U.S. Department of Labor ("DOL"). Compl. ¶ 14. The grant provided federal funding to support programs remedying academic underachievement at Germantown High School; pursuant to its obligations under the grant, the School District contracted with BGCP to implement, among other things, the "Step It Up" program. Compl. ¶ 15, 18. Both BGCP and the School District received proceeds from the grant. Compl. ¶ 17.

During the summer of 2010, the School District incorporated the "Step It Up" program into its Summer Bridge Program, which welcomes rising ninth graders to campus in an effort to decrease the drop-out rate. Compl. ¶ 20. On Tuesdays and Thursdays, the School District provided students participating in the "Step It Up" program with catered breakfasts and lunches paid for by the DOL grant. Compl. ¶ 25.

Sometime in early summer of 2010, Plaintiff noticed that staff and teachers of Germantown High School were "purloining" the catered student lunches, resulting in a shortage of lunches for students. Compl. ¶ 6. Plaintiff immediately reported her observations to Dr. Arlene C. Ackerman, the Superintendent of the School District. Compl. ¶ 27. Specifically, plaintiff reported that the teachers' and staff members' conduct violated the School District's obligations under its DOL grant and that the School District was fraudulently misrepresenting to DOL that it was giving the lunches only to students. Compl. ¶ 28.

Ackerman referred Mayer to Majeda Scott, the Interim Director of Multiply [sic] Pathways. Compl. ¶ 29. Scott took no action in response to Mayer's complaint. Compl. ¶ 29.

Plaintiff further complained to Margaret Mullen, Principal of Germantown High School, who told Plaintiff that the student meals were "not [Plaintiff's] concern" and that Plaintiff had

"no right" to question the School District's actions.  Compl. ¶ 31.  Mullen also informed Plaintiff that she knew Plaintiff had "spoken with Dr. Ackerman and had contacted the Department of Labor," and she intended to "teach [Plaintiff] a lesson."  Compl. ¶ 31.

On or about July 17, 2010, following Plaintiff's meeting with Mullen, Plaintiff registered another complaint about the "purloining" of student lunches with Diane Datcher, the Site Coordinator for BGCP.  Compl. ¶¶ 26, 32.

Finally, on or about July 19, 2010, allegedly in retaliation for having reported the School District's misconduct and fraudulent misrepresentations, the School District terminated Plaintiff's assignment to Germantown High School and BGCP terminated Plaintiff's employment with BGCP.  Compl. ¶ 33.

On December 29, 2010, Plaintiff filed a complaint alleging that she was terminated in violation of the False Claims Act and the Pennsylvania Whistleblower Law.   (ECF No. 1.)  On March 24, 2011, BGCP filed a Motion to Dismiss Plaintiff's Complaint.  (ECF No. 11.)  Plaintiff filed her response on April 25, 2011, and BGCP replied on May 2, 2011.  (ECF No. 16.)  Plaintiff was granted leave to file a surreply brief, which she did on September 12, 2011. (ECF No. 19.)

### III.   Summary of BGCP's Motion

BGCP attacks Plaintiff's Complaint on multiple grounds.  First, with respect to Plaintiff's FCA claim, BGCP contends that Plaintiff failed to adequately plead that she engaged in "protected conduct" under the FCA and that she was terminated "because of" that conduct.  Second, with respect to Plaintiff's PWL claim, BGCP argues that it does not qualify as a "public body" under the PWL; BGCP further argues that the alleged misconduct of "purloining" lunches

3

does not qualify as "wrongdoing" as that term is used in the statute.

### IV. Legal Standard

#### A. Jurisdiction

This Court has jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

#### B. Motion to Dismiss for Failure to State a Claim

Under the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must plead sufficient factual allegations, that, taken as a whole, state a facially plausible claim to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations to survive the motion. Id. at 1949 (citing Twombly, 550 U.S. at 555).

In analyzing the complaint, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d

224, 233 (3d Cir. 2008)).  However, the court may disregard any legal conclusions in the complaint.  Id. at 210-11 (citing Iqbal, at 1949).

Generally, the district court may consider only the facts alleged in the complaint and its attachments on a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The court may also take into consideration "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

V.   Discussion

    A.   FCA

        1. **Protected Conduct**

BGCP contends that Plaintiff has not adequately pleaded that she "engaged in protected conduct," as required to establish a claim of retaliation under the FCA.  United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 110 (3d Cir. 2007).

The FCA protects a wide variety of conduct, including "investigation for, initiation of, testimony for, or assistance in" an FCA claim.  31 U.S.C. § 3730(h).  But a plaintiff need not have developed "a winning *qui tam* action" to receive protection under the FCA,  Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 187 (3d Cir. 2001) (internal quotation marks omitted); rather, the statute also protects "other actions to stop one or more violations [of the FCA]."  31 U.S.C. § 3730(h).

Here,  Plaintiff asserts that she witnessed misconduct regarding federally-funded student lunches distributed as part of a student mentoring program administered by BGCP and the

School District. Compl. ¶¶ 26, 30. She further claims that she reported that misconduct on multiple occasions to BGCP and School District officials and expressed her concern that fraudulent misrepresentations about federal funds were being submitted to DOL. Compl. ¶¶ 27-32. Plaintiff has adequately pleaded the existence of "protected conduct" for purposes of surviving a motion to dismiss.

### 2. Discrimination "Because of" Protected Conduct

BGCP argues that Plaintiff failed to adequately plead that her termination occurred "because of" protected conduct. Specifically, she is required to allege: "(1) [that] h[er] employer had knowledge [s]he was engaged in 'protected conduct'; and (2) that h[er] employer's retaliation was motivated, at least in part, by the employee's engaging in 'protected conduct.'" Hutchins, 253 F.3d at 186.

As stated above, Plaintiff alleges that she informed various officials involved in the "Step It Up" program of the misconduct she observed, including the Site Coordinator for BGCP, Compl. ¶ 32; accordingly, she has sufficiently pleaded that her employer was aware of her protected activity.

Second, a causal link between protected activity and adverse action may be inferred from "an unusually suggestive temporal proximity between the [two]." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Here, Plaintiff contends that shortly after she submitted her complaints to school officials—and a mere two days after her complaint to the Site Coordinator of BGCP—BGCP terminated Plaintiff's employment. Compl. ¶ 33. This temporal proximity is "unusually suggestive" and, therefore, Plaintiff has adequately pleaded that her employer's retaliation was motivated, at least in part, by her protected activity.

B.   PWL

1. Public Body

BGCP next asserts that Plaintiff's PWL claim must be dismissed as a matter of law because BGCP is a private entity, not a "public body" as required under the PWL. See 43 P.S. § 1422. According to BGCP, its receipt of public funds in the circumstances presented here—that is, pursuant to a contractual relationship with the School District—is insufficient to qualify it as a "public body" under the PWL. BGCP also posits that, insofar as Plaintiff's Complaint may be read to assert that the BGCP receives other funding directly from the Commonwealth, see Compl. ¶ 10, the Complaint is insufficiently specific with respect to the source and nature of those other funds.

The PWL defines a "public body" as including "[a]ny . . . body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." 43 P.S. § 1422(3). The Pennsylvania Supreme Court has not yet addressed the proper interpretation of the phrase "funded in any amount by or through Commonwealth or political subdivision authority." Id. In the absence of that Court's authoritative statement of Pennsylvania law, we may look to Pennsylvania Superior Court opinions as "persuasive precedent." State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 108 n.2 (3d Cir. 2009).

BGCP correctly points out that the Superior Court previously has held that receipt of funds pursuant to a government contract, alone, is not enough to qualify an otherwise private entity as a "public body" under the PWL. See Krajsa v. Keypunch, Inc., 622 A.2d 355, 360 (Pa. Super. 1993); accord Cohen v. Salick Health Care, Inc., 772 F. Supp. 1521, 1527 (E.D. Pa. 1991)

(applying Pennsylvania state law).

More recently, however, the Superior Court stated in <u>Denton v. Silver Stream Nursing & Rehab. Ctr.</u>, 739 A.2d 571, 576 (Pa. Super. Ct. 1999) (not cited by BGCP), that "subsequent and binding state case law [has] direct[ed] [it] to a different conclusion." Specifically, the Court held in <u>Denton</u> that receipt of any public funding "appropriated <u>by</u> the Commonwealth . . . [or] that passes <u>through</u> the Commonwealth," whether by legislative appropriation, federal or state contract, or otherwise, qualifies a private entity as a "public body" under the PWL. <u>Id.</u> (emphases in original); <u>see also</u> <u>Riggio v. Burns</u>, 711 A.2d 497 (Pa. Super. Ct. 1998) (en banc) (holding that a private college that received funds appropriated to it by the Pennsylvania General Assembly qualified as a "public body").

This Court finds the reasoning in <u>Denton</u> compelling and consistent with the plain text of the statute, which broadly states that an entity is a "public body" if it is funded in "<u>any</u> amount <u>by or through</u>" the Commonwealth. 43 P.S. § 1422(3) (emphases supplied). Here, Plaintiff's Complaint includes the following allegations, among others: (1) that BGCP "receives funding from the Commonwealth of Pennsylvania," Compl. ¶ 10; (2) that the School District "entered into a contractual relationship with [ ] BGCP," Compl. ¶ 15; (3) that "both Defendant BGCP and Defendant School District received proceeds from" the DOL grant, Compl. ¶ 17; (4) that the BGCP mentoring program "became part of [the] School District's Summer Bridge Program," Compl. ¶ 20; and (5) that Plaintiff, an employee of BGCP, oversaw a mentoring program that took place on School District grounds and in which student lunches were "paid for out of Defendant School District's DOL grant," Compl. ¶ 25. Viewed together and construed in the light most favorable to the Plaintiff, these allegations provide sufficient factual content to

8

"allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft,, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

### 2. Wrongdoing

The PWL provides that "[no] employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report . . . to the employer or appropriate authority an instance or wrongdoing or waste." 43 P.S. § 1423(a). "Wrongdoing," in turn, is defined as "a violation which is not of a merely technical or minimal nature of a Federal or State Statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. Similarly, "waste" is defined as "an employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Id.

BGCP argues that Plaintiff's PWL claim regarding "purloin[ed]" student lunches involves, at best, a de minimis violation of applicable law and is inadequate to state a claim upon which relief can be granted under the PWL. This Court disagrees. Although Plaintiff does not precisely describe the severity of the conduct at issue, she does allege that the conduct led to a shortage of student lunches, that it occurred on multiple occasions, and that it resulted in fraudulent misrepresentations to DOL. Compl. ¶ 26, 28-30. Plaintiff's allegations are sufficient to survive a motion to dismiss, but BGCP is, of course, free to attempt to demonstrate at summary judgment or trial that the extent of the alleged misconduct did not, in fact, exceed de minimis violations of applicable law.

9


## VI. Conclusion

   For the reasons set forth above, BGCP's Motion to Dismiss is DENIED.  An appropriate Order follows.

O:\CIVIL 09-10\10-7574 Mayer v. Boys & Girls Clubs\Mayer MTD memo.wpd